# CASES

IN

# THE SUPREME COURT

OF

# PENNSYLVANIA.

---

## Harry J. Grimmer, Appellant, *v.* Pennsylvania Railroad Co.

*Negligence—Railroads—Path on right of way of railroad.*

In an action against a railroad company to recover damages for personal injuries, received by plaintiff while approaching a station on a dark night, it appeared that plaintiff was unfamiliar with the road to the station, and upon inquiry was told to follow a white clay path which ran parallel with the tracks, about eighteen feet from them, within defendant's right of way, and ended at the station platform on the farther side of a street which crossed the railroad at this point. The path had long been used as a way to the station. At the time of the accident the street which crossed the railroad at the station was being excavated for an undergrade crossing, and the defendant had placed an obstruction on the path just south of the street. During the progress of the work the path became defined around the obstruction, and as the work of excavation progressed people had to cross by a temporary crossing on which were the tracks themselves. The plaintiff testified that he went around the obstruction, and found himself "on more obstructions" and finally on the trestle where he was struck by an engine before he could extricate himself. *Held*, that the judgment of nonsuit was properly entered.

Argued March 23, 1896. Appeal, No. 329, Jan. T., 1895, by plaintiff, from judgment of C. P. No. 4, Phila. Co., March T., 1894, No. 536, refusing to take off nonsuit. Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL and DEAN, JJ. Affirmed.

VOL. CLXXV—1

Trespass for personal injuries.   Before ARNOLD, J.

At the trial it appeared that plaintiff was injured after dark on October 31, 1893, while approaching with a companion named O'Neill, Wissonoming station, on the New York branch of defendant's railroad. Plaintiff and his companion, being unfamiliar with the road to the station, made inquiry, and were told to follow a white clay path which led to the station. The path ran parallel with the tracks, about eighteen feet west of them, within the defendant's right of way, and ended at the station platform on the farther side of Comly street, which crossed the railroad at the station. This path had been continuously used for many years by the public as a way to the station. At the time of the accident Comly street had been excavated for an undergrade crossing, and the defendant placed the obstruction on the path just south of the street. During the progress of the work, the path became defined around the obstruction and across Comly street; at first, on a strip of dirt left unexcavated on the west side of the track; but as the work proceeded this was dug away and the people had to cross by a temporary trestle on which were the tracks themselves. Finally, the work was completed, the street reopened at the depressed grade, the path closed and obliterated, and Keystone street, parallel with the railroad, was opened to Darkrun lane instead. The plaintiff described the accident as follows :

"We followed that pathway which we were instructed to go. Just as we had been walking, I think it must have been a yard or something like that, we walked that path, when we found ourselves confronted by an obstruction, but the pathway led around the obstruction, and we followed that pathway yet. Meantime, it got dark, and all of a sudden I found myself on more obstructions. I was walking alongside of the track on a pathway, and all of a sudden I found myself confronted. I seen that I wasn't walking on solid ground no more, but only about maybe a yard or so I seen a stone pier. This appeared to me only a temporary thing, because I didn't know that the path-beaten didn't lead no further any more; but the minute we had been on there, or I had been on there, I realized danger, and I turned to Mr. O'Neill, and told him in these words, that I think this was a structure of some kind, but we didn't have no time any more to do anything, what to do. The train came and

caught us all of a sudden while I was saying that to him. There was no time thinking about doing things any more; all I could do to tell him to jump, and he succeeded in jumping while the cowcatcher struck my leg. I didn't know whether it was the cowcatcher or a wheel. I couldn't say that for sure, but I think it must have been the cowcatcher. Q. What happened after that? A. Then I was thrown on the stone pier, and from there I dropped down. Q. Down into what? A. Into water and mud, and one thing and another. Q. What did you find out afterwards that they had been doing there with the street? A. Afterwards I found out that they had been cutting the street through there, and that this was a temporary trestle bridge that I got on. I found that out afterwards. Q. The path led upon this tresslework, did it? It led right into it. Q. How long were you on that trestlework before you saw the train—did you have any time to think? A. I didn't have any time to think at all. It led us right into it. Q. The train came upon you? A. Yes, sir; before we were on the bridge right. Q. How far was this from the station where you were struck? A. As I learned afterwards, the station was right on the other side of the bridge."

Daniel P. O'Neill, who was with the plaintiff, corroborated his story as follows : " Q. You were walking rapidly along that well defined path of a whitish color, with a reflected light in your face? A. Yes, sir. Q. Could you see the ground distinctly? A. Not very far ahead of us. Q. What happened then? A. We walked, and we came to some obstruction where there was some timbers, or something. Q. An obstruction where? A. On this path. Q. What did the path do then? A. The path wound around it. Q. What did you do? A. We kept on. Q. What did you find? A. We went a few yards further, and the poor man who got his leg off discovered that he was on a trestle structure. Q. Was he ahead of you, or behind you? A. He was a few steps ahead of me. Q. Was he on the track, or on the path, or where? A. I should judge then that he was walking on the ties, but at that time the ties were still on the solid ground. Q. Was he at the side of the rails, or between two rails? A. He was west of the west rail. Q. How many steps had he taken around that obstruction, do you think? A. I should think about three yards. Q. Then

what happened? A. He exclaimed, 'We're on a trestle!' Q. What were his exact words, if you can remember them?' A. 'Jesus, we're on a trestle bridge;' that was his expression. Q. Then what happened? A. The next thing he says, 'Jump —an engine.' Q. What did you do? A. I jumped."

Howard P. Castor, called by plaintiff, testified in cross-examination as follows: " Q. So that when the track was raised, which was before the steps were placed there, the path was practically obliterated? A. Right at the bridge. Q. How far out toward Darkrun lane? Was it obliterated as far as Funk street? A. No, I think it runs within fifty yards of Comly street yet. Q. Coming down Funk street, is there any way you could get from it to the railroad? It is not opened at all, is it? A. No, sir. Q. There is nothing to invite anybody to come that way by the railroad? A. No, not by the way of that street. Q. Therefore, the street next to Comly is a closed street, practically at Keystone? A. Yes, sir."

By the Court. "Q. Any person walking along that path would be perfectly safe? A. Yes, sir. Q. They couldn't be struck by anybody? A. No, sir. Q. Therefore, the plaintiff wasn't struck while on the path? A. No, sir; I judged the path was about eighteen feet from the railroad."

The court entered a compulsory nonsuit which it subsequently refused to take off.

*Error assigned* was refusal to take off nonsuit.

*Thomas Leaming, Allan H. Gangewer* with him, for appellant.—From the evidence it is clear that the plaintiff was free from fault and was not a trespasser: Phila. & Reading R. R. v. Troutman, 11 W. N. C. 453; Taylor v. Del. & Hudson Canal Co., 113 Pa. 162; Shutt v. Cumberland Valley R. R., 149 Pa. 266; Chapman v. Rothwell, E. B. & E. 168; Freer v. Cameron, 4 Rich. 228.

*David W. Sellers,* for appellee.—The nonsuit was justified upon the authority of Bell v. R. R., 122 Pa. 58; Mooney v. R. R., 126 Pa. 251; Matthews v. Penn. R. R., 148 Pa. 493; Matthews v. Phila. & Read. R. R., 161 Pa. 28.

PER CURIAM, April 6, 1896:

A careful examination of the testimony, in the light of the clear and able argument of appellant's counsel, has failed to disclose anything that would have justified the learned trial judge in submitting to the jury the question of defendant company's negligence as the proximate cause of plaintiff's unfortunate injury. We are all of opinion that there was no error in refusing to take off the judgment of nonsuit.

Judgment affirmed.